UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA R. K., an Individual, | Case No.: 8:19-00685 ADS |
| Plaintiff, | |
| v. | |
| | MEMORANDUM OPINION AND ORDER OF REMAND |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.   **INTRODUCTION**

Plaintiff Monica R. K.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her application for a period of disability and disability insurance benefits ("DIB").

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] On June 17, 2019, Saul became the Commissioner of Social Security.  Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II.    <u>FACTS RELEVANT TO THE APPEAL</u>

A review of the entire record reflects certain uncontested facts relevant to this appeal.  Prior to filing her application for social security benefits, Plaintiff worked as a custodian for the state in the Employment Development Department from 2001 until 2015.  (Administrative Record "AR" 73, 225, 231, 278).  In that capacity, she performed vacuuming, dusting, mopping, sweeping, stocking, receiving and shipment, rearranged furniture, and removed trash.  (AR 73, 232).  In March 2014, she injured herself while grabbing a trash can, which flipped over.  (AR 34, 2977).  She stopped working March 10, 2015, because of her condition, and she received a worker's compensation settlement and state disability.  (AR 71-73, 224, 238, 255).  She alleged disability in the underlying application based on problems with her back, shoulder, knee, legs, as well as hypertension and mental health issues.  (AR 224, 241, 258).

On July 10, 2017, in conjunction with Plaintiff's workers' compensation claim, orthopedic surgeon Dr. Charles Schwarz completed an "Agreed Medical Examination Supplemental Report."  (AR 2976-80).  In a detailed discussion, he summarized Plaintiff's medical history since her 2014 injury.  (AR 2976-78).  Her initial treatment included a cortisone injection in her left shoulder, medication, physical therapy, and acupuncture.  (AR 2977).  In April 2014, she was given a lidocaine and Depo-Madrol injection, was treated with naproxen and tramadol and referred to physical therapy, and her evaluating doctor recommended "[m]odified duty."  (AR 3977).  Dr. Schwartz explained that Plaintiff then had an x-ray on April 5, 2014, which showed mild degenerative changes at the acromioclavicular joint, and magnetic resonance imaging

1    ("MRI") on August 2, 2014, which showed rotator cuff tendinosis.  (AR 2977).  On

2    August 6, 2014, she received another steroid injection.  (AR 2977).

3           In January 2015, Plaintiff was referred to a different physician, who provided her

4    with more physical therapy, medication, and chiropractic treatment.  (AR 2977).  By

5    May 2015, shoulder surgery was recommended.  (AR 2977).

6           On July 29, 2015, Plaintiff had surgery.  Dr. Schwarz described her condition as

7    "arthroscopic decompression for the left shoulder with arthroscopic distal clavicle

8    resection, extensive debridement of the supraspinatus, and infraspinatus rotator cuff

9    tear."  (AR 2977).  Her postoperative diagnosis was "impingement syndrome, left

10   shoulder degenerative joint disease acromioclavicular joint, and bursal surface partial

11   thickness rotator cuff tear for the left shoulder."  (AR 2977).

12          After surgery, Dr. Schwarz explained how Plaintiff again took part in physical

13   therapy from 2015-2016, and in July 2016 received another cortisone injection.  (AR

14   2977-78).  She also received prescription medication, including pain medication and

15   muscle relaxants, but they were discontinued due to adverse side effects.  (AR 2978).

16   She had another postoperative MRI, and her doctor recommended a home exercise

17   program to strengthen her left-upper extremity and shoulder.  (AR 2978).

18          After reviewing this history, Dr. Schwarz diagnosed Plaintiff with: (1) partial

19   rotator cuff tear, left shoulder; (2) subacromial impingement syndrome, left shoulder;

20   (3) acromioclavicular degenerative joint disease, left shoulder; and (4) status post

21   arthroscopic decompression with distal clavicle resection and debridement, left

22   shoulder.  (AR 2978).  Dr. Schwarz explained that, as of his last evaluation of Plaintiff on

23   August 26, 2016, Plaintiff reached "maximum medical improvement," and she was not

24   capable of returning to her "usual customary work."  (AR 2976, 2978).  He further

concluded that "she cannot perform work at or above shoulder level.  In addition, there is a limitation of lifting to no more than 20 pounds with the left upper extremity."  (AR 2978).

Dr. Schwarz also completed a "Physicians Return To Work and Voucher Report," and attached it to his supplemental report.  (AR 2978).  That form indicated Plaintiff "[m]ay not lift/carry at a height of 36 [inches] more than 20 lbs. for more than 2 hours per day" with her left upper extremity; and reiterated that Plaintiff could not work at or above shoulder level with her left upper extremity.  (AR 2980).

## III.  PROCEEDINGS BELOW

### A. Procedural History

Plaintiff protectively filed her application for DIB on September 14, 2016, alleging disability beginning March 10, 2015.  (AR 27, 197-201).  Plaintiff's application was denied on February 17, 2017.  (AR 104).  A hearing was held before ALJ Cynthia Floyd on September 5, 2018.  (AR 68-85).  Plaintiff, represented by counsel, appeared and testified at the hearing, as did vocational expert Robin Generaux.  (Id.).

On September 25, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[3]  (AR 27-40).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 12, 2019.  (AR 1-7).  Plaintiff then filed this action in District Court on April 10, 2019, challenging the ALJ's decision.  [Docket ("Dkt.") No. 1].

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

On September 23, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record.  [Dkt. Nos. 16, 17].  The parties filed a Joint Stipulation on December 13, 2019.  [Dkt. No. 18].  The case is ready for decision.[4]

### B.  Summary of ALJ Decision After Hearing

In the ALJ's September 25, 2018 decision (AR 27-40), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[5]  20 C.F.R. § 404.1520(a)(4).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 10, 2015, the alleged onset date.  (AR 29).  At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) history of partial rotator cuff tear; (b) left shoulder with subacromial impingement syndrome; (c) acromioclavicular degenerative joint disease; and (d) status post arthroscopic decompression with distal clavicle resection and debridement, July 29, 2015.  (AR 29).  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity

---

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment.  [Dkt. Nos. 12, 13].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing her past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520); see also Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020).

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 33).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform light work as defined in 20 C.F.R. § 404.1567(b)[7,] further restricted by the following limitations:

> lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally reach overhead and occasionally reach in any direction with the left upper extremity.

(AR 33).

At **step four**, based on the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform her past relevant work as a janitor (Dictionary of Occupational Titles ("DOT") 382.664-010). (AR 38).

At **step five**, the ALJ found that, "[c]onsidering the [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that existed in significant numbers in the national economy that [Plaintiff] can perform . . .." (AR 39). The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7] "Light work" is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

occupations of: mail clerk (DOT 209.687-026); mailing clerk (DOT 209.587-034); and production helper (DOT 524.687-022).  (AR 39-40).  As such, the ALJ found that Plaintiff "has not been under a disability," as defined in the SSA, from March 10, 2015, through the date of the decision, September 25, 2018.  (AR 40).

## IV.  ANALYSIS

### A.  Issues on Appeal

Plaintiff raises two issues for review, reordered as: (1) whether the ALJ provided specific and legitimate reasons to reject the limitations assessed by the agreed upon medical examiner, Dr. Schwarz; and (2) whether evidence submitted to the Appeals Council renders the ALJ's step-five conclusion no longer supported by substantial evidence.  [Dkt. No. 18 (Joint Stipulation), p. 4].  For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to give proper consideration to Dr. Schwarz's medical opinion, and remands on that ground.

### B.  Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole,

weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

## C. **The ALJ Failed to Properly Evaluate Dr. Schwarz's Opinion.**

Plaintiff asserts that the ALJ did not provide specific and legitimate reasons for discounting the opinion of Dr. Schwarz.  [Dkt. No. 18, pp. 18-21, 25-27].

### 1.  Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence.  20 C.F. R. § 404.1527(b).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting <u>Bayliss</u>, 427 F.3d at 1216).

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing <u>Robbins</u>, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); <u>see also</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded opinion by setting forth specific and legitimate reasons for rejecting it that were supported by the entire record).

### 2. <u>The ALJ Failed to Provide Specific and Legitimate Reasons, Supported by Substantial Evidence, for Rejecting the Opinion of Dr. Schwarz.</u>

Here, the ALJ provided a brief summary of Dr. Schwarz's July 10, 2017 agreed medical examination supplemental report (AR 37), and then later in the decision provided the following analysis of it, in its entirety:

> The undersigned gives less than full weight to Dr. Schwarz's opinion at Exh. 104F/30[8] because it is not consistent with the subsequent MRI scan which showed only mild deformity of distal clavicle (Ex. 104F/3)[9].

(AR 38).

Having carefully reviewed the record, the Court agrees with Plaintiff that the analysis of the opinion is insufficient, for three reasons.

---

[8] This citation is a typographical error. Dr. Schwarz's opinion consists of five pages at Exhibit 104, with no 30th page.  (AR 2976-80).

[9] This citation is not to the MRI, but rather the third page of Dr. Schwarz's opinion. (AR 2978).

First, the limitations outlined by Dr. Schwarz's opinion are significant—including restricting Plaintiff to carrying or lifting at a height of 36 inches and performing no work at or above shoulder level—and appear to be the doctor's most recent assessment of Plaintiff's condition.  The failure to discuss any of the limitations, let alone explain which allegedly conflicted with the MRI, was error.  See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must discuss significant and probative evidence and explain why it was rejected); Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Alvarez v. Astrue, 2012 WL 282110, at *3 (C.D. Cal. Jan. 26, 2012) ("If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted.").

Second, and relatedly, the ALJ failed to properly identify the allegedly conflicting "subsequent" MRI.  As noted, the ALJ does not cite to it, and multiple MRIs exist in the record.  The Commissioner points to a June 16, 2016 MRI, [Dkt. No. 18, p. 23 (citing AR 2004-05)], but that MRI was not subsequent to Dr. Schwarz's July 10, 2017 opinion.  If the ALJ meant to refer to an MRI that was conducted subsequent to surgery, but before the opinion, that needed to be explained in the decision and cited or somehow properly identified for the Court to be able to conduct its review.  See Brown-Hunter, 806 F.3d at 492; Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Third, Dr. Schwarz's opinion contained terms, such as "modified duty," and "maximum medical improvement," which may seem facially self-explanatory but in fact

refer to specialized terminology in the workers' compensation context.  (AR 2977-78).  For example, "maximum medical improvement" is a reference to "permanent and stationary," a term of art in the state workers' compensation.  See, e.g., Baltazar v. Berryhill, 2017 WL 2369363, at *2 (C.D. Cal. May 31, 2017) (noting claimant's condition was "'permanent and stationary' (i.e., that [claimant] had reached maximum medical improvement)"); Fanale v. Astrue, 2007 WL 9724147, at *1 (C.D. Cal. Dec. 5, 2007) (noting that "permanent and stationary" is a "term of art used with respect to worker's compensation claims" and that such terms "are not equivalent to Social Security disability terminology" (citing Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)) aff'd, 322 F. App'x 566 (9th Cir. 2009); 8 Cal. Code Regs. § 10152.  Neither "modified duty" nor "maximum medical improvement" were explained in the ALJ's summary of Dr. Schwarz's opinion or the one-sentence assessment of it (AR 37-38), and, while the ALJ mentioned those terms elsewhere in the decision, along with other terms specific to workers' compensation law such as "totally temporarily disabled" (AR 35-37), none of the terminology was ever defined or otherwise translated to the Social Security context.  See Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (decision was not supported by substantial evidence because the ALJ had not adequately considered definitional differences between the California workers' compensation system and the SSA); Barcenas v. Berryhill, 2017 WL 3836040, at *3 (C.D. Cal. Aug. 31, 2017) (ALJ errs by failing to translate physician's opinion about claimant's limitations in workers' compensation context into Social Security context); Rocha v. Astrue, 2012 WL 6062081, at *2 (C.D. Cal. Dec. 3, 2012) (if there are terms of art utilized in the workers' compensation context "it is the job of the ALJ to translate the meaning of such terms into the Social Security context").

Fourth, and finally, because the opinion was not properly discussed and the limitations were not presented to the vocational expert (AR 82-84)[10], the Court cannot determine harmlessness.  See Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (holding vocational expert's opinion, based on hypothetical that omitted "significant limitations" on claimant's ability to perform certain activity, "had no evidentiary value"), abrogated on other grounds by Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001); Devery v. Colvin, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (court could not determine harmlessness of ALJ's failure to discuss reasons she rejected limitations because vocational expert did not testify that a hypothetical person with those limitations could work); Dunlap v. Astrue, 2011 WL 1135357, at *6 (E.D. Cal. Mar. 25, 2011) (court could not determine harmlessness of error because it was unable to "determine how the [vocational expert] would have responded if he had been given a hypothetical containing [examining physician]'s  actual opinion.")

As such, the Court reverses the ALJ's decision and remands for assessment of Dr. Schwarz's July 10, 2017 opinion consistent with this decision.

**D.    The Court Declines to Address Plaintiff's Remaining Arguments**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of

---

[10] The third hypothetical somewhat reflected Dr. Schwarz's assessed limitations, and the VE testified no work would be available to Plaintiff, but it did not fully match.  (AR 83-84).

credibility, consideration of physician's opinions, step-two findings, and step-five analysis); <u>Augustine ex rel. Ramirez v. Astrue</u>, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 495; <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E.   **Remand For Further Administrative Proceedings**

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). On remand, the ALJ shall properly review and evaluate Dr. Schwarz's opinion and reassess Plaintiff's RFC. The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff can perform.

## V.    **<u>ORDER</u>**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.  Judgement shall be entered accordingly.


DATE: September 25, 2020


_____/s/ Autumn D. Spaeth_____
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge